SCHOONMAKER–CONNERS CO., Inc., v. NEW YORK TRAP ROCK COR-PORATION.

THE JAMES G. SHAW.

District Court, E. D. New York. June 15, 1928.

No. 8851.

1. Shipping ⬥⟾54(2)—Charterer's failure to observe Weather Bureau's storm warnings held not a fault, in absence of such custom.

Failure of charterer of scow for use in New York harbor to observe Weather Bureau's storm warnings *held* not a fault, rendering it responsible for sinking of scow, as it is not the custom of navigators on Hudson river to observe such warnings.

2. Shipping ⬥⟾54(2)—Refusal of consignee's engineer to lighten load of scow when wind rose held fault, rendering charterer responsible for its sinking.

Refusal of consignee's engineer to reduce load on scow alongside consignee's exposed dock after wind rose, especially when requested by captain, was a fault rendering charterer responsible for resulting sinking of scow.

3. Shipping ⬥⟾54(1)—Charterer, using scow to transport stone to exposed dock outside charter limits, held liable for damages by its sinking, though not negligent.

Charterer of scow for use in transporting stone from its quarries to points within insurance limits of New York harbor became liable for damages sustained by its sinking while using it in transporting stone to exposed dock outside such limits, though without negligence on part of charterer or those to whom it intrusted scow.

In Admiralty. Libel by the Schoonmaker-Conners Company, Inc., owner of the scow James G. Shaw, against the New York Trap Rock Corporation. Decree for libelant.

William F. Purdy, of New York City, for libelant.

Frederick W. Park, of New York City, for respondent.

CAMPBELL, District Judge. On or about May 6, 1925, the libelant chartered to the respondent the scow James G. Shaw, under a contract or agreement, confirmed in writings, dated January 15, 1925, and May 6, 1925, copies of which are attached to and made part of the libel, in pursuance of which charter libelant delivered the said scow to respondent on or about the 4th day of May, 1925, at which time said scow was tight, staunch, strong, and in every respect seaworthy.

On November 21, 1925, the said scow was delivered by the respondent to the libelant in a damaged condition, which damages were not the result of ordinary wear and tear. By the terms of such charter the libelant was to keep the scow in a seaworthy condition, and respondent was not to be responsible for any damage for which it was not legally liable, and libelant was to furnish a man to have charge of the boat who was to be on board at all times, unless he had respondent's permission to leave the boat, and respondent was not to be responsible for the safety of the boat during his absence.

It was further provided by said charter that the boat was to be used in the transportation of stone from the respondent's quarries to points in the insurance limits of New York harbor. On the trial it was conceded that Piermont was the northern insurance limit of New York harbor at the time of the happening of the events hereinafter set forth.

The scow James G. Shaw was loaded by the respondents at their quarries with broken stone, and on the day preceding the day in question placed alongside the Consolidated Gas Company's dock on the Hudson river at Tarrytown, N. Y., commonly called Bull's Dock. The face of the dock is along the river, and there is plenty of water, but it is wholly unprotected against strong westerly, northwesterly, or southwesterly winds.

On October 25, 1925, the scow James G. Shaw was tight, staunch, strong, and in every respect seaworthy, properly made fast to the dock, and the captain remained on board. No part of the load of the Shaw was removed, although the captain requested the engineer of the consignee, who was working with the unloading crane near the scow, to lighten her up some.

The wind on that day, as appears from the record of the Weather Bureau station on the top of the Whitehall Building, at New York City, had been light northeasterly and easterly until, between 9 and 10 o'clock a. m., it rose to 27 miles an hour; it changed

to southerly, and from 10 to 11 o'clock a. m. rose to 28 miles an hour, and between 11 o'clock a. m. and 12 o'clock noon to 51 miles an hour, when it changed to southwesterly, and between 12 and 1 o'clock p. m. to 62 miles an hour; it then changed to northwesterly, and between 1 and 2 p. m. it blew at the rate of 54 miles an hour; then again it changed to westerly between 2 and 3 o'clock p. m. to 59 miles an hour, and then again it changed to northwesterly between 3 and 4 o'clock p. m. to 66 miles an hour. The maximum force of the wind at 12:35 p. m. was 74 miles southwest, at 1:09 p. m. 83 miles west, at 2:50 p. m. 60 miles west, and at 3 p. m. and 3:20 p. m. 72 miles northwest.

[1] Libelant makes a point of the failure of the respondent to observe storm warnings of the Weather Bureau, but this was not a fault, as it is not the custom of navigators on the Hudson river so to do. The Victoria (C. C. A.) 95 F. 184, Certiorari Denied, 175 U. S. 725, 20 S. Ct. 1022, 44 L. Ed. 338. During all the time between 9 a. m. and the time of the sinking of the boat, between 3 and 4 p. m., nothing was done to aid the Shaw.

[2] The severity of the wind and sea was shown by the eyewitnesses, and some time before the sinking of the scow, which occurred between 3 and 4 o'clock, nothing could have been done to aid her, nor does it seem to have been practicable to have placed her in a slip, and after the wind rose I doubt that this was possible; but it was possible, at least up to 12 o'clock noon, to have reduced the load on the scow Shaw, and, if the request of the captain had been granted, in all reasonable probability, judged by the other boats in like condition whose load had been lightened, the scow could have been kept afloat, and the failure and refusal of the consignee's engineer so to do, especially when requested, with the boat lying at an exposed dock, was a fault for which respondent is responsible, and therefore it cannot be held that the sinking of the Shaw was an inevitable accident.

[3] If, however, it be held that I am in error in so finding, the respondent cannot be relieved, because as bailee for hire the respondent was bound to use the boat only as provided in the charter, viz. in the transportation of stone from the respondent's quarries to points in the insurance limits of New York harbor, the northerly limit of which is Piermont, and in using the boat in the transportation of stone from the respondent's quarries to the exposed dock at Tarrytown, which is outside of the insurance limits of New York harbor, the respondent became lia-ble for damages sustained by the scow, even without negligence on the part of the respondent or those to whom it intrusted the scow. Beach v. Raritan & Del. Bay R. R. Co., 37 N. Y. 457.

A decree may be entered in favor of the libelant, with costs, and the usual order of reference.